NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4537
_____

UNITED STATES OF AMERICA

v.

ROBERTO CASTANON,
a/k/a
Robert Felipe Castanon,
a/k/a
Felipe Castanon

ROBERTO CASTANON,
                            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Action No. 10-cr-00237-001)
District Judge:  Honorable William H. Walls
_____

Submitted Under Third Circuit LAR 34.1(a)
January 24, 2012
_____

Before:  FISHER, GREENAWAY, JR., *Circuit Judges* and JONES[*], *District Judge*.

(Opinion Filed:  January 25, 2012)
_____

OPINION
_____

_____

[*] District Court Judge John E. Jones sitting by designation.

GREENAWAY, JR., *Circuit Judge.*

Appellant Roberto Castanon ("Castanon") appeals the District Court's November 22, 2010 judgment sentencing him to a term of thirty-seven months of imprisonment and three years of supervised release. For the following reasons, we will affirm the District Court's judgment and sentence.

## I.    BACKGROUND

We write primarily for the benefit of the parties and shall recount only the essential facts. From January 2003 to February 2007, Castanon and numerous defendants conspired to defraud insurers by staging automobile accidents. Castanon and his co-defendants would stage the collisions and then report the accidents to the police. The purportedly injured person would seek medical attention at various chiropractic facilities, including Spinal Care and Rehabilitation and Perth Amboy Diagnostics. Castanon was the president and owner of Spinal Care and Rehabilitation. The co-defendants would then submit false invoices and other documents related to medical and chiropractic claims to various automobile insurance companies.

On April 6, 2010, Castanon pled guilty to count one of the information, charging him with conspiracy to commit mail fraud, pursuant to 18 U.S.C. § 1349. Castanon acknowledged that the loss attributable to the insurance companies was in excess of $400,000. The District Court held a sentencing hearing on November 22, 2010 and determined that Castanon's total offense level was twenty-one, with a criminal history category I. Castanon's counsel then requested a downward variance under 18 U.S.C. §

3553(a), arguing that it should be granted because of Castanon's extraordinary family circumstances.[2]

In addition, Castanon's counsel requested a variance to facilitate the payment of restitution to the victims, based on the contention that the custodial term suggested by the advisory Guidelines was more than necessary to meet the need of deterring Castanon and others.[3]

The government argued for a sentence within the advisory Guidelines range, citing to Castanon's role, the offense conduct, the seriousness of the offense, and the sentences of the other defendants.

The District Court evaluated the 18 U.S.C. § 3553(a) factors, and concluded that Castanon's family circumstances did not remove his case from the heartland of similarly situated criminal cases, hence a variance was not warranted. The District Court imposed a sentence of thirty-seven months, with three years of supervised release.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction, pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[2] Castanon was 63 years old, and served as the caretaker for his wife who was suffering from a recurrence of breast cancer. Castanon reportedly provided physical, emotional and financial support for his wife.

[3] Apparently, Castanon reimbursed one victim by selling his [Castanon's] family residence.

A district court's sentencing procedure is reviewed for abuse of discretion. Gall v.

United States, 552 U.S. 38, 51-52 (2007). On abuse of discretion review, the court of

appeals gives due deference to a district court's sentencing decision. Id. at 51.

> Our appellate review proceeds in two stages. It begins by ensuring that the
> district court committed no significant procedural error, such as (1) failing
> to calculate (or improperly calculating) the U.S. Sentencing Guidelines
> range; (2) treating the Guidelines as mandatory; (3) failing to consider the
> 18 U.S.C. § 3553(a) factors; or (4) selecting a sentence based on clearly
> erroneous facts, or failing to adequately explain the chosen sentence and to
> include an explanation for any deviation from the Guidelines range. If the
> district court's sentence is procedurally sound, we will affirm it unless no
> reasonable sentencing court would have imposed the same sentence on that
> particular defendant for the reasons the district court provided.

United States v. Tomko, 562 F.3d 558, 567-68 (3d Cir. 2009) (en banc).

At stage two, we consider a sentence's substantive reasonableness. Our

substantive review requires us not to focus on one or two factors, but on the totality of the

circumstances. At both stages of our review, the party challenging the sentence has the

burden of demonstrating unreasonableness. Id. at 567 (internal quotations marks,

brackets, and citations omitted).

### III.   ANALYSIS

Castanon argues that his sentence of thirty-seven months was substantively

unreasonable, and was based upon the U.S. Sentencing Guidelines calculation contained

in the PSR. Castanon also contends that the District Court failed to consider the

mitigating 18 U.S.C. § 3553(a) factors before imposing its sentence.[4] Castanon argues

---

[4] Castanon is contending that the District Court committed procedural error in sentencing,

that the failure of the District Court to give meaningful weight and consideration to the mitigating factors was unreasonable and erroneous as a matter of law, and contrary to the holding in United States v. Booker, 543 U.S. 220 (2005).

After the Supreme Court's decision in Booker, sentencing Guidelines were no longer deemed mandatory. Instead, they were deemed advisory. Since Booker, district courts are required to follow a three-step process in determining the appropriate sentence in this advisory scheme:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.
> (2) In doing so, they must formally rul[e] on the motions of both parties and stat[e] on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and tak[e] into account [our] Circuit's pre-Booker case law, which continues to have advisory force.
> (3) Finally, they are required to exercise [] [their] discretion by considering the relevant [§ 3553(a)] factors, in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (internal quotation marks and citations omitted).

Sentencing judges are statutorily required to state their reasons for imposing a sentence, although a comprehensive, detailed opinion is not required. Rita v. United States, 551 U.S. 338, 356 (2007). The judge must provide an explanation that is

---

although he does not actually articulate the argument in the brief. He also contends that the sentence was substantively unreasonable. For those reasons, we examine the District Court's sentence for procedural error and substantive unreasonableness.

5

sufficient to satisfy the appellate court that the district court considered the parties' arguments and had a reasoned basis for exercising its own decision-making authority. Id.

*Procedural Error*

The Probation Office prepared a PSR, in which it claimed that Castanon was responsible for $698,321.92 in loss, based on the invoice amounts billed to various insurance carriers. As reported in the PSR, the applicable guideline, § 2B1.1(a)(1), carries a base offense level of seven. Because the loss was more than $400,000 but less than $1,000,000, a fourteen level enhancement, pursuant to § 2B1.1(b)(1)(H), was applicable. In addition, Castanon was found to be a manager or supervisor of the criminal conduct, pursuant to § 3B1.1(b), resulting in a three-level enhancement. The adjusted offense level was twenty-four, with a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a), and an additional one-level reduction for acceptance of responsibility, pursuant to §3E1.1(b) (provided that a motion by the Government would be granted at sentencing). The adjusted offense level was calculated at twenty-one. The offense level of twenty-one, along with a criminal history category of I, provides an advisory Guidelines range of thirty-seven to forty-six months of imprisonment. Pursuant to § 3583(b)(2), the Court may impose a term of supervised release of not more than three years. Castanon was sentenced to the bottom of the advisory Guidelines range at thirty-seven months, with three years of supervised release.

At the sentencing hearing, Castanon requested a downward variance, based on his family obligations and his wife's illness. The government requested a sentence within

6

the applicable advisory Guidelines range, emphasizing that Castanon was the leader of the criminal enterprise, and supervised his co-defendants. The government also pointed out that in order to prevent any unwarranted sentencing disparities with the co-defendants sentenced previously, a sentence within the advisory Guidelines was appropriate.

At the sentencing hearing, the District Court heard the parties' arguments and Castanon's testimony. It then reiterated the facts of the case, and addressed Castanon's argument regarding his unique circumstances. Although Castanon's counsel pointed out that Castanon was sixty-three years old, the District Court stated "[t]hat he is in his sixties is really of no moment because he committed the crime while he was in his late fifties and he knew what he was doing. His acts were [sic] not that of a young person who was acting out of immaturity or impulse. He knew exactly what he was doing." Appendix, Vol. II, A41. Next, the District Court discussed and sympathized with the fact that Castanon's wife was seriously ill, but pointed out that the wife receives the care and support of her adult daughters. Given that his wife is cared for, Castanon's situation did not "fall outside of what can be expected of within the mainstream of human events, particularly since she has the available services of her mature children." Id. at Vol. II, A42.

The District Court then explained the purpose of sentencing, which is to "provide suitable punishment for the nature of the crime, to provide possible avenues for rehabilitation, and to do all of this consistent with the needs of society and the interest of overall justice, taking into account the previous history of the person." Id. at A43. The

7

District Court stated that Castanon needed to be punished for the crime, because he was aware of his criminal actions, had engaged in them for three to four years, and had actively recruited others to participate in the criminal activities.

The District Court did not abuse its discretion in denying Castanon's request seeking a downward departure.

Castanon also argues that the District Court did not properly consider the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense. Sentencing courts must give meaningful consideration to all of the factors in 18 U.S.C. § 3553(a). See United States v. Olhovsky, 562 F.3d 530, 546 (3d Cir. 2009) (citing United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006)). A district court's "failure to consider the § 3553(a) factors" can create a procedurally unreasonable sentence. United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008) (quoting Gall, 552 U.S. at 51.)

We find that the District Court adequately addressed the § 3553(a) factors. The District Court stated at sentencing, "I have no desire to punish him [Castanon] more than what is necessary. I believe what I am about to do is reasonable, consistent with his own previous criminal history, together with his, with the nature of the crime. . ." Appendix, Vol. II, A44. The District Court commented on the nature and circumstances of the offense by stating "[t]he nature of the crime, as I said, was widespread and he netted $300,000 by his own admission. That he invested it in his small business is really of no moment as far as to what he did, other than to say that he had no right to do anything with the money because he had no right to the money initially." Appendix, Vol. II, A43-44.

The District Court discussed Castanon's supervisory role in the crime, and stated that it would ensure that the punishment was "consistent with the nature of the crime which affected all of society in the context of burdening society with added cost of living, particularly of driving by fake claim." Id.

*Substantive Unreasonableness*

Castanon argues that the sentence is substantively unreasonable and is an abuse of discretion. The substantive component of a reasonableness review requires the appellate court to take into account the totality of the circumstances. United States v. Lychock, 578 F.3d 214, 217 (3d Cir. 2009). Although the appellate court considers the extent of any variance from the advisory Guidelines range, it must also give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. Id. The substantive reasonableness of each sentence must be evaluated on its own terms, based on the reasons that the district court provided, in light of the particular facts and circumstances of that case. Tomko, 562 F.3d at 574. In examining the totality of the circumstances, we determine whether any reasonable court could have imposed the same sentence as the District Court. See Lychock, 578 F.3d at 219 n.2.

During the sentencing hearing, the District Court recounted Castanon's crimes and his particular role as a supervisor in the crime. The District Court discussed Castanon's circumstances at great length, considered the effect of the crime on the victims, and the losses incurred, particularly when making its ruling regarding restitution. The District Court also reviewed and commented on various letters of support on Castanon's behalf.

9

The District Court considered and discussed the § 3553(a) factors. The record contains numerous indications that the District Court evaluated all of the circumstances of this crime and used its discretion in deciding that a downward departure was not warranted in this case. In addition, the District Court considered the possibility of a disparity in sentencing, pursuant to 3553(a)(6). The District Court noted "I certainly see no reason that's been advanced that I would consider meaningful in the context of sentencing to give the present ringleader less than what I have given his accomplice supporters." Appendix, Vol. II, A43.

The sentence imposed was well within the District Court's broad discretion and we find that a reasonable court could have rendered the same sentence. We have emphasized that sentences falling within the advisory Guidelines range are more likely to be reasonable than those falling outside of that range. See United States v. Olfano, 503 F.3d 244-45 (3d Cir. 2007). The sentence imposed here was not substantively unreasonable and there is no abuse of discretion.

## IV.    CONCLUSION

The District Court rendered a sentence that is both procedurally correct and substantively reasonable. We will affirm the judgment of conviction.